812 F.2d 1402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jesse T. WEBB, Appellant,
v.
FISCHER PACKING COMPANY, a Kentucky corporation, Appellee,
and
Wilson Foods Corporation, a Delaware corporation, Defendants.
 No. 85-1897.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 11, 1986.
Decided Feb. 17, 1987.
 
 Before RUSSELL and HALL, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 Arthur P. Strickland; Robert C. Boswell (Strickland & Rogers, on brief), for appellant.
 James Joseph Sakolosky (Frank G. Davidson, III; Davidson & Sakolosky, on brief), for appellees.
 PER CURIAM:
 
 
 1
 Jesse Webb appeals the district court's order granting the motion for judgment notwithstanding the verdict ("JNOV") made by defendants, Fischer Packing Company and its parent corporation, Wilson Foods Corporation (collectively referred to as "Fischer"). By this order, the district court set aside the jury's verdict that Fischer had forced Webb at fifty-eight years of age into taking early retirement, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 et seq. (1985). We affirm.
 
 I.
 
 2
 Webb had been employed as a meat salesperson with Fischer's Roanoke, Virginia, division for approximately twenty-two years when his sales productivity began a downward trend. Between 1978 and 1982, Webb's sales decreased by more than 24%--from 21,350 to 16,190 pounds per week. During this same period of time, the sales productivity of the division as a whole increased slightly. Lee Holdridge, sales manager for Fischer, first complained about Webb's performance in October, 1981. During the nine months between October, 1981, and July, 1982, Holdridge met with Webb on eight different occasions to discuss how Webb could increase sales. In November, 1981, Holdridge directed Webb to implement new strategies which would increase productivity. He also set a productivity goal for Webb.[1]
 
 
 3
 In January, 1982, Holdridge evaluated Webb's performance and determined that Webb had made no effort to implement the new strategies designed to increase sales. At this time, Webb was placed on probation and told to make weekly reports of all actions that he took to implement the strategies.
 
 
 4
 Thereafter, Holdridge held meetings with Webb during the months of February, April and June of 1982. Although Webb's productivity goal was reduced during this time in order to provide an incentive for improvement,[2] his sales continued to fall. Moreover, Webb made no effort to implement the productivity strategies or to submit the required weekly reports. During the June meeting, Webb was informed that if no improvement was made, he would be fired. In July, 1982, Webb was given the choice of being fired or taking early retirement. Webb chose the latter option and after proceeding with his administrative remedies through the Equal Employment Opportunity Commission, he filed this action in the district court. The case was tried by a jury, which awarded Webb $28,369 in compensatory damages and a like amount in liquidated damages. Pursuant to defendant's motion, the district court granted JNOV. Citing Lovelace v. Sherwin-Williams Company, 681 F.2d 230 (4th Cir.1982), the district court found that plaintiff's evidence did not suffice to allow a jury to infer that age discrimination was a determinative factor in his demotion. This appeal followed.
 
 II.
 
 5
 On appeal, Webb contends that the district court erred in granting JNOV, because there was sufficient evidence to support the jury's finding of discriminatory discharge. We disagree, and like the district court, conclude that Lovelace requires judgment in favor of Fischer. In order for a jury's verdict in favor of an ADEA plaintiff to withstand a motion for JNOV, there must be at least a reasonable probability that discrimination is more likely than the defendant's proffered reason for the employment action. Evidence which raises only a possibility that discrimination occurred is inadequate as a matter of law. Lovelace, 681 F.2d at 245.
 
 
 6
 In the instant case, and in Lovelace, both claimants were directed to implement specific programs for improvement and make progress reports, but failed to do so. The record in the present case is further replete with evidence of Webb's inability to cooperate and his lack of interest in following orders of his superiors. Moreover, the overall increase in the division's sales productivity refutes Webb's assertion that his own inability to increase sales was a result of poor market conditions.
 
 
 7
 The only evidence which might be construed to support Webb's assertion of discrimination was a comment made by Holdridge in the spring of 1982, when Webb was asked to delay his vacation. Webb testified that Holdridge referred to him as the oldest and most expensive employee in the Roanoke division. Holdridge, however, testified that he called Webb the most "experienced" rather than "expensive." Even if Webb's version is credited, we find this evidence to be so slight that it does nothing more than raise discrimination as a mere possibility, rather than a reasonable probability. Under Lovelace, this evidence is insufficient to preclude the entry of JNOV.
 
 
 8
 For the foregoing reasons, the order of the district court granting Fischer's motion for JNOV is affirmed.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Holdridge told Webb that his sales must rise from his current level of 18,720 pounds per week to 25,000 pounds per week, and directed that Webb implement the following strategies to reach the sales goal:
 
 
 [1]
 set up advertisements and in-store promotions in all accounts;
 
 
 [2]
 set up demonstrations in larger accounts;
 
 
 [3]
 change his Thursday sales route call to Tuesday and expand this route into new territory;
 
 
 [4]
 move several phone calls from Tuesdays to Mondays
 
 
 [2]
 Holdridge reduced Webb's sales goal from 25,000 to 20,000 pounds per week for the first month, to be raised to 22,000 pounds per week for the following two months, and to 25,000 pounds per week thereafter